UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

FILED
August 14, 2007

CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| VERNON DOWNS, | ) | |
| TDCJ NO.1069096, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 7:05-CV-082-R |
| | ) | |
| NATHANIEL QUARTERMAN,[1] Director, | ) | |
| Texas Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
|     Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

Came on to be considered the papers and pleadings filed in this action and the Court finds and orders as follows:

This is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by an inmate currently confined in the French Robertson Unit of the Texas Department of Criminal Justice in Abilene, Texas. Downs was indicted on two counts of burglary of a habitation, with two enhancement paragraphs. He entered a plea of not guilty to both counts. Jimmy Collazo, a co-defendant, had by then entered a plea of guilty and was sentenced to ten-years community supervision for the same burglaries. On October 25, 2001, Downs was convicted on Count I of the indictment and acquitted on Count II. At the punishment phase of the trial that same day, the jury sentenced Downs to forty-five years imprisonment and assessed a $2,500 fine. Downs' trial counsel did not call any character or mitigating witnesses to testify on Downs' behalf at punishment. The

---

[1] Effective June 1, 2006, Nathaniel Quarterman was named Director of the Texas Department of Criminal Justice, Correctional Institutions Division. The caption of this case is being changed pursuant to Fed. R. Civ. P. 25(d).

Court of Appeals for the Second Judicial District of Texas affirmed his conviction November 14, 2002. The Texas Court of Criminal Appeals refused Downs' petition for discretionary review on May 14, 2003. Downs filed a state writ application on May 8, 2004, alleging ineffective assistance of appellate counsel, which the Court of Criminal Appeals denied without written order or a hearing on February 9, 2005. Downs filed this federal petition for writ of habeas corpus on April 12, 2005.

In support of his petition, Downs presents the following grounds for relief:

1. Denial of effective assistance of counsel when Trial Counsel failed to:

    a. investigate Downs' criminal charges where no crime had been committed;

    b. investigate and interview the only prosecution witness before;

    c. call or interview co-defendant Jimmy Collazo, who had previously been convicted of the same crime and would have testified that he acted alone; and

    d. call Downs' sister, JoeAnn Washington, at punishment.

2. Denial of effective assistance of counsel when Appellate Counsel:

    a. failed to review the trial transcripts before the hearing on the motion for new trial;

    b. filed a petition for discretionary review which was refused;

    c. failed to raise trial court error in failing to suppress his statement; and

    d. failed to appeal the trial court's denial of his motion for new trial.

3. The trial court abused its discretion when it failed to suppress Downs' statement.

Fed. writ pet. at 7-8.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA" or "The Act"), Pub. L. 104-132, 110 Stat. 1214, under which there is now a heightened standard of review in federal habeas corpus proceedings. Title I of the Act

substantially changed the way federal courts handle such actions. The AEDPA applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 2063 (1997). Downs filed the instant petition after the effective date of the AEDPA. Therefore, Title I of the Act applies to his petition.

The AEDPA provides in relevant part that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C.A. § 2254(d) (West 2003).

Under the "contrary to" clause, a federal court may grant the writ of habeas corpus if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000); *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002, 121 S.Ct. 508 (2000). Under the "unreasonable application" clause, a federal court may, in the absence of a direct federal-state conflict of law, grant a writ of habeas corpus if the state court either unreasonably applies the correct legal rule to the facts of a particular case unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529

U.S. at 407, 120 S.Ct. at 1520. The standard for determining whether a state court's application was unreasonable is an objective one, and applies to all federal habeas corpus petitions which, like the instant case, were filed after April 24, 1996, provided that they were adjudicated on the merits in state court. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). In the context of habeas corpus, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on *substantive* rather than *procedural* grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

Upon a finding of state court compliance with the "contrary to" clause of 28 U.S.C. § 2254(d)(1), federal courts give deference to the state court's findings unless such findings violate the "unreasonable application" clause of 28 U.S.C. § 2254(d)(2). *Chambers*, 218 F.3d at 363. The "unreasonable application" clause concerns only questions of fact. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001 (2001). The resolution of factual issues by the state court is afforded a presumption of correctness and will not be disturbed unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 771 (1981). Absent such evidence, the presumption of correctness is applied provided that the state court findings are evidenced in writing, issued after a hearing on the merits, and are fairly supported by the record. *E.g., Burden v. Zant*, 498 U.S. 433, 111 S.Ct. 862, 864 (1991); *Williams v. Scott*, 35 F.3d 159, 161 (5th Cir. 1994), *cert. denied*, 513 U.S. 1137, 115 S.Ct. 959 (1995); 28 U.S.C. § 2254(d).

Here, the Texas Court of Criminal Appeals denied Downs' State application for habeas relief. *Ex parte Downs* at cover. Such a denial constitutes an adjudication on the merits. *See, e.g., Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Downs must therefore satisfy the "contrary to" or "unreasonable application" clauses of the AEDPA to obtain relief. 28 U.S.C. §

2254(d). Unfortunately, Downs has merely reasserted the same claims from his state habeas application, claiming but not demonstrating that its denial was an unreasonable application of federal law. Because Downs has not met his burden of providing "clear and convincing evidence" as required by *Summer* the AEDPA, this Court must provide the state courts with a presumption of correctness and deny Downs his relief.

Additionally, Downs has failed to demonstrate that he is entitled to relief for any of his claims for ineffective assistance of counsel. The Sixth Amendment guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). When a convicted defendant seeks relief on the ground of ineffective assistance of counsel, he must, rather than merely allege that counsel's performance was deficient, show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Id.* at 687-91 & 694. A reasonable probability is sufficient to undermine confidence in the outcome. *Id.* at 694. A court must, however, indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). In addition to showing that counsel's performance was deficient, a petitioner must also demonstrate that he was actually prejudiced by the performance. *Johnson v. Cockrell*, 301 F.3d 234. As with deficiency, it is not enough to simply allege prejudice; a petitioner must affirmatively prove it. *Strickland*, 466 U.S. at 693.

Here, Downs has for the most part exhausted his state remedies, thereby allowing this Court to review his claims on the merits save for those claims that are not exhausted. Downs' claims are discussed in detail below; for the sake of convenience, all are included, and those for which the state remedies are not exhausted or procedurally barred will be identified as such in the discussion.

Downs first claims that his trial counsel failed to investigate the charges against him and discover that no crime had been committed. Fed. writ pet. at 7; *Memo* at 2; *Ex parte Downs* at 7. The state court has construed this argument to relate to the charges to which Downs was acquitted, and so will this Court. In order to establish that counsel was constitutionally inefficient, Downs must allege with specificity what such investigation would have revealed and how it would have effected the outcome of the case. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). He has not. It appears to be the case that Downs bases this first claim–that no such offense occurred–on the acquittal of one of his charges and the difference between the date charged and the date presented in evidence. Fed. writ pet. at 7. However, because the indictment only alleged that Downs had committed the burglary "on or about" January 15, *Clerk's Record* at 2-3, the government did not have to prove that he committed the burglary on that exact day.

Next, Downs claims that trial counsel failed to investigate and interview "the only prosecution witness" before trial. Fed. writ pet. at 7; *Ex parte Downs* at 7, 10. The record indicates that there were in fact *four* witnesses for the prosecution, *Reporter's Record* at 3, but it seems to be the case that Downs contends he was indicted solely for the alleged offense of burglary of a habitation on January 15, 2001, based on victim Laurie Ann Toney's written offense report. Downs further contends that, at trial, Toney told a different story because she could not remember the date on which the burglary was supposed to have occurred. Fed. writ pet. at 7.

However, not only did the prosecution not have to prove that Downs committed the burglary on exactly January 15, but Downs has failed to overcome the presumption of correctness to which the state courts' findings are entitled.

Downs next claims his Trial Counsel was constitutionally deficient for failing to interview co-defendant Collazo and failing to discover that, if called, Collazo would have testified that he had previously entered a plea of guilty to the charges and that he had acted alone. Fed. writ pet. at 7; *Memo* at 8. Downs claims that he was actually prejudiced by counsel's failure to call Collazo, after counsel had subpoenaed him and he was in court and available to testify, because Collazo would have testified that he acted alone. Fed. writ pet. at 10. Downs further contends that the court of appeals erred in concluding that he had failed to demonstrate prejudice because, under *Washington v. Texas*, 388 U.S. 14 (1967), such error could never be harmless. *Memo* at 7. Downs' reliance on *Washington*, however, is misplaced, as that case involved a Texas statute's *prohibition* of a co-defendant's testimony rather than trial counsel's *decision* not to use it. *Washington v. Texas*, 388 U.S. 14, 23 (1967). Here, Down's Trial Counsel chose not to use Collazo's testimony, rather than being statutorily barred therefrom; *Washington* therefore does not apply.

To support this claim of ineffective assistance of counsel due to an uncalled witness, Downs must prove that the witness was willing and able to testify, and what he would have testified. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To this end, Downs provided such information at the motion for a new trial during which Collazo testified. However, while Downs may well have met this burden, he must still demonstrate that counsel's decision not to call Collazo both fell below the objective standards of professional reasonableness and subjected him to prejudice. This Court is not convinced that Downs has done either.

The record indicates trial counsel was concerned that Collazo's testimony might contradict other defense witness' testimony and was not confident that Collazo would stick to his story that he acted alone. *Reporter's Record*, vol. 7, at 28. Furthermore, pertinent facts such as Collazo's existing guilty plea and testimony to police that he had acted alone were already in evidence. Counsel also knew that Collazo had made statements to investigators contradicting testimony given by other defense witnesses. *Id.* Counsel's decision not to call Callazo to testify therefore appears to be a matter of trial strategy rather than professional deficiency. Trial strategy decisions are virtually unchallengeable, *Bryant v. Scott*, 28 F.3d 1411 (5th Cir. 1994), and Downs' counsel's decision not to call Collazo is no exception.

Further, Downs' claim that counsel failed to investigate Collazo is refuted by an affidavit provided in his state writ application indicating that defense counsel's file included a twelve-page, typewritten transcript of an investigator's interview with Collazo. *Ex parte Downs* at 51. The state habeas court found this affidavit to be credible and true. *Id.* at 59. Although trial counsel did not interview Collazo himself, Downs has not shown that he was deficient for relying on information he received from his investigator. *See Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (counsel not deficient where he relied on information from his law partner regarding potential witnesses in deciding whether to interview or call them to testify). Downs has therefore failed to overcome with clear and convincing evidence the presumption of correctness to which the state court's finding is due, and this claim in turn fails.

Similar problems plague Downs' next allegation, that he was prejudiced by counsel's failure to call witnesses in the punishment phase of trial and sending Downs' sister JoeAnn Washington home, saying her services would not be needed when she would have testified that Downs was a

nonviolent person with a good work ethic and had gainful employment awaiting him upon release. Fed. writ pet. at 8; *Ex parte Downs* at 12, 44. He contends that the court of appeals erred in failing to find that he was so prejudiced, *Id.*, and pointing out that the court of appeals *did* find that counsel *was* deficient in failing to call any mitigating witnesses. *Memo* at 5. Downs again relies on *Washington v. State*, and is again mistaken, as trial counsel chose not to call JoeAnn rather than was barred from doing so by statute.

In the context of a non-capital sentence in an ineffective assistance of counsel claim, this Court apples the doctrine set forth in *Spriggs v. Collins*, 993 F.2d 85 (1993). Under *Spriggs*, a showing of prejudice requires a showing of reasonable probability that, absent counsel's unprofessional errors, the non-capital sentence would have been "significantly less harsh." 993 F.2d at 88. There are four factors to consider in making this determination:

1. the actual amount of the sentence imposed on the defendant by the judge;

2. the minimum and maximum sentences possible;

3. the relative placement of the sentence actually imposed within that range; and

4. the various relevant mitigating and aggravating factors that were properly considered by the sentencer.

*Id.* at 88-89. Prejudice "must be rather appreciable before a new trial is warranted in view of counsel's error." *Id.* at 88, n.4.

The court of appeals found that counsel's failure to call Washington did not prejudice Downs because the record did not support a finding that he would have received a lesser sentence but for this failure. *Downs v. State* at 11; *Ex parte Downs* at 79. Here, Downs has failed to overcome the strong presumption of correctness to which this finding is entitled, alleging, rather than the existence of a reasonable probability, only that it is possible that he might have gotten a lesser sentence.

At punishment, the State introduced evidence that Downs had previously been convicted of forgery and subsequently had his probation revoked, that he was convicted of burglary of a vehicle and his probation revoked there as well, and that he had been convicted of burglary of a habitation three years prior to trial. *Reporter's Record*, Vol. 6, at 10-11. The State also introduced victim impact testimony to the effect that Toney felt invaded and violated due to the burglaries, had sold the house she had grown up in and inherited from her grandmother, and had received few of her possessions back and not been paid any restitution. *Reporter's Record*, Vol. 6, at 14-16. Meanwhile, at the hearing on the motion for a new trial, Washington testified that she would have been willing and able to testify that Downs had been living with her for some time, that he had a non-violent character, that he had good work habits, and that she would have asked for leniency. *Reporter's Record*, vol. 7, at 55-56. Defense also presented evidence of Collazo's involvement in and sentence for the same burglaries. *Reporter's Record*, vol. 6, at 16-17.

The sentencing range Downs faced was between five and 99 years. *Reporter's Record*, vol. 6 at 22. The prosecution suggested that Downs' previous chances and leniency necessitated a very long sentence, such as 30 years or life. *Id*. The jury sentenced him to forty-five years. *Ex parte Downs* at 86. Downs has failed to demonstrate that, but for counsel's failure to call Washington to the stand to testify that he was non-violent and a good worker, there was a reasonable probability the jury would have assessed a *significantly* less harsh sentence. Downs has also failed to demonstrate that the state courts' determination that he failed to demonstrate such prejudice satisfied the "contrary to" or "unreasonable" clauses. Therefore, this claim, too, is without merit.

Downs next claims that he was denied effective assistance of appellate counsel at the hearing on his motion for a new trial because counsel stated that he was unprepared, had not represented

Downs at trial, had not had access to Downs, and had not reviewed his transcripts. Fed. writ pet. at 11; *Ex parte Downs* at 41. In support of this claim, Downs quotes an objection counsel made at the hearing, which was overruled. *Memo* at 9-10. It is unclear, however, and both the Fifth Circuit and Supreme Court have yet to address, whether a defendant has a Sixth-Amendment right to post-conviction, pre-appeal representation of counsel. *Graves v. Cockrell*, 351 F.3d 143, 155 (5th Cir. 2003); *Mayo v. Cockrell*, 287 F.3d 336 (5th Cir. 2002). Because there is no clearly established federal law, the state court's determination against this claim cannot be contrary to or an unreasonable application of such law. Further, Downs has not alleged any failure of his counsel to object, call witnesses, or raise issues during the motion hearing, or how such failures might have affected the outcome of the proceedings. Because Downs had ample opportunity to present additional evidence in support in his state writ application, but did not, he was not deprived of the opportunity to present such evidence. He therefore has not demonstrated that or how he was prejudiced by counsel's unpreparedness. The state habeas court found that appellate counsel could not be faulted for not having access to the reporter's record at the time because it was not due by the hearing date on the motion for new trial and, therefore, denied Downs' claim of ineffective counsel. *Ex parte Downs* at 62. Downs has failed to overcome the strong presumption of correctness to which the findings are due, and so this claim fails.

Downs' next claim of ineffective counsel, arising from the refused petition for discretionary review, is unexhausted and therefore procedurally barred. In his state writ application, Downs alleged that his appellate counsel was constitutionally ineffective because "Appellate Counsel failed to list a cause number of some sort." *Ex parte Downs* at 8. However, Downs neither presented an argument regarding prejudice to the Court of Appeals or Court of Criminal Appeals, meaning this

particular allegation was not fairly presented to the highest state court and is therefore unexhausted. *See, e.g., Thomas v. Collins*, 919 F.2d 333, 334-335 (5th Cir. 1990).

Further, if Downs were to present this issue to state courts today, he would be in violation of Texas' abuse of the writ doctrine, which provides in relevant part that:

> § 4. (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
>> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>>
>> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.
>
> (b) For purposes of Subsection (a)(1), a legal basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.
>
> (c) For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

Tex. Code Crim. Proc. Ann. art. 11.07 § 4 (West 2006). The Texas abuse of the writs doctrine presents an adequate state procedural bar for the purposes of federal habeas review. *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997), *cert denied*, 523 U.S. 1139, 118 S.Ct. 1845 (1998) *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.), *cert. denied*, 515 U.S. 1153, 115 S.Ct. 2603 (1995).

Even had Downs exhausted his state remedies, this particular claim would still fail on the merits because there is no federal constitutional right to assistance of counsel in pursuing discretionary review. *Ross v. Moffit*, 417 U.S. 600 (1974); *Wainwright v. Torna*, 455 U.S. 586 (1982); *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000). It necessarily follows that if Downs had no constitutional right to assistance of counsel on petition for discretionary review, then he could not have been unconstitutionally deprived of such right. Further, the mere fact that counsel did not raise the particular arguments Downs would have liked does not, in itself, rise to the level of constitutional deficiency or show prejudice; counsel is not required to argue every conceivable issue on appeal, but rather has the professional duty to choose among potential issues according to his judgment. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Therefore, even if the Sixth Amendment were to apply to a petition for discretionary review, Downs's claim would still fail on the merits.

The next claim of ineffective appellate counsel Downs alleges is that counsel was constitutionally deficient in failing to raise on appeal the issue that the trial court had erred in failing to suppress his statement when it had before it evidence that the statement was given while Downs was intoxicated and the statement was not witnessed and signed by anyone other than the peace officer. Fed. writ pet. at 11. According to Downs, this claim was preserved by objection at trial and would have made a difference in the outcome of his appeal. *Memo* at 8. He cites *Anders v. California*, 386 U.S. 738 (1967), to establish that this failure rendered appellate counsel's performance constitutionally deficient.

Downs' reliance on *Anders*, however, is mistaken. In *Anders*, the Supreme Court held that a state defendant was denied adequate representation of counsel on appeal when the state-appointed appellate counsel prepared no brief, but instead advised the court by letter that he found no merit in

the appeal. 386 U.S. at 742. Here, Downs' counsel did not say to the court that he believed Downs' claim had no merit, and even represented Downs on appeal, which Anders' counsel did not. It is true that Downs' counsel did not raise the particular issue Downs would have preferred. However, counsel was not required to raise every conceivable issue on appeal; rather, he was to choose among potential issues according to his trial strategy and professional judgment. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Downs also claims that the trial court abused its discretion when it failed to suppress the statement his last ineffective counsel claim concerned. Fed. writ pet. at 8. He contends that the trial court heard at the suppression hearing that Downs had been drinking beer and liquor all day, was intoxicated when he was taken into custody, and that his statement was therefore not freely and voluntarily given. *Id.* He further alleges that he did not remember being read his rights before he gave his statement and contends that the statement was not witnessed by anyone but the peace officer. *Memo* at 6. For these reasons, he claims, the court did not follow the voluntary standard of Tex. Crim. Pro. Art. 38.21-38.23. *Id*.

This claim is without merit for three reasons. First, article 38.21 of the statue only requires a statement to be witnessed by someone other than a peace officer if the accused is unable to write and the statement bears his mark. Tex. Crim. Pro. Art. 38.21 § 1. There is no evidence on the record to indicate that Downs cannot write. Indeed, Downs has submitted a handwritten federal writ petition and, more importantly, testified in court that he writes "pretty good" [sic] and wrote down his own statement that day. *Reporter's Record*, vol. 2, at 5. Second, the statute requires that if the court finds the statement to have been made voluntarily, the issue may be submitted before a jury and the jury instructed that unless it believes beyond reasonable doubt that the statement was

voluntarily made, it will not consider it. Tex. Crim. Pro. Art. 38.22 § 6. The court found the statement to be voluntary, *Reporter's Record*, vol. 2, at 34-35, and instructed the jury as § 38.22 requires. *Transcript* at 79-80. Finally, at the hearing on the motion to suppress, Downs and his sister both testified that he had consumed copious amounts of alcohol before giving his statement, *Reporter's Record*, vol. 2, at 6, 16, while the officer testified that he did not smell alcohol on Downs or observe any behavior that would indicate Downs was intoxicated. *Reporter's Record*, vol. 2, at 21, 27-28. Therefore, the court did not abuse its discretion in admitting the statement with an instruction to the jury to only consider it if it found the statement to be voluntary beyond a reasonable doubt. For the foregoing reasons, Downs' claim that the court abused its discretion is without merit.

Downs further claims his appellate counsel was constitutionally deficient for failing to preserve the right to argue that the trial court erred in denying his motion for new trial. Fed. writ pet. at 12. The record and testimony prior to the hearing, he contends, indicate that counsel had notified the court that he was unprepared and had limited access to Downs to prepare. *Memo* at 9-10. This argument, however, does not support the stated claim. If anything, it would support Downs' claim that appellate counsel was ineffective for not being prepared for the hearing on the motion for new trial, but this Court has already decided against that claim and in any event *that* claim is not *this* claim.

Because Downs' argument does not support his claim, he has failed to show that counsel was constitutionally deficient for failing to directly appeal the trial court's denial of his motion for new trial. Appellate counsel in fact raised on appeal ineffective assistance of counsel claims arising out of the hearing for the motion for new trial, which were reviewed *de novo*. *Ex parte Downs* at 73.

*Salazar v. State*, 38 S.W.3d 141 (Tex. Crim. App. 2001), governs the standard under which appeals of denials of motions for new trial are reviewed in Texas state courts, which is abuse of discretion. *Id.* at 148. After its *de novo* review, the court of appeals found that Downs had failed to demonstrate trial counsel was ineffective. Downs has failed to allege why this Court should not afford the state courts their strong presumption of correctness, and so this claim fails as well.

For the foregoing reasons, IT IS ORDERED that this petition for writ of habeas corpus is DENIED.

The Clerk of Court shall transmit a true copy of this order to Petitioner and to Counsel for Respondent.

SO ORDERED this 14th day of August, 2007.

_____
JERRY BUCHMEYER,
UNITED STATES DISTRICT JUDGE